

In The
Court of Appeals
Seventh District of Texas at Amarillo

No. 07-26-00161-CV

APOGEE TX HIGH PLAINS, LLC, APPELLANT

V.

ACTON ACADEMY, A NONPROFIT CORPORATION, APPELLEE

On Appeal from the 181st District Court
Randall County, Texas
Trial Court No. 87181B, Honorable Titiana D. Frausto, Presiding

July 30, 2026

MEMORANDUM OPINION

Before PARKER, C.J., and YARBROUGH and PRATT, JJ.

Before us is the appeal of Appellant, Apogee TX High Plains, LLC ("Apogee High Plains"), in which it challenges the trial court's denial of its motion to dismiss pursuant to the Texas Citizens Participation Act ("TCPA"). Apogee High Plains brings two issues, arguing: (1) the trial court erred in denying its TCPA motion because Appellee, Acton Academy's, claims arise from Apogee High Plains' constitutionally protected speech and association in the educational arena and Acton failed to meet its burden of establishing application of the trade secret or commercial speech exemptions, and (2) the trial court

erred in denying Apogee High Plains' TCPA motion because Acton failed to present clear and specific evidence to support the essential elements of its claims. We affirm.

## BACKGROUND

Acton is a non-profit educational organization that was founded in 2009 in Austin, Texas by Jeff and Laura Sandefer. They created and developed educational materials consisting of many pages of alleged proprietary materials and other items stored in a learning management system.[1] According to pleadings in the record, those materials are protected by a trademark license agreement and an access and license agreement.[2]

Matt Beaudreau and Tim Kennedy (as well as his entity Apogee Cedar Park, LLC d/b/a Apogee Cedar Park) signed agreements in November 2020 with Acton for the purpose of operating schools under the Acton umbrella. After signing the agreements, Kennedy opened an Acton campus he called "Apogee."[3] The schools used Acton materials in educating their students. In 2022, Acton terminated both Beaudreau and Kennedy, severing their affiliation with Acton. Under the agreements Beaudreau and

---

[1] As set forth in the pleadings:

> Acton Academy's learning design includes over 20,000 pages of interwoven proprietary materials, including unique and original examples, framework, processes, recipes, systems schedules, maps, contracts, audition funnels, challenges and launches for learners, parents, guides, and owners ("Acton Materials").

[2] The pleadings state:

> The Acton Materials and content are legally protected and secured by various materials, including, but not limited to, its *Trademark License Agreement* and *Access and License Agreement*. These materials must be acknowledged and accepted for an affiliate or its employees to access Acton Academy's learning design and content.

[3] The documents Kennedy signed included an agreement restricting the use of Acton materials and content as well as the trademark name and domain name, including those using "Apogee."

2

Kennedy signed, the two should have ceased using the Acton materials.[4]  Thereafter, Beaudreau and Kennedy established the Apogee network, launching several schools nationwide that allegedly utilize Acton materials.[5]

One of those schools was Apogee High Plains.  Rebecca and Jerry Wehust founded Apogee High Plains in late summer 2024 for the purpose of providing private educational options to the Amarillo, Texas area.  Acton sued Apogee High Plains for unfair competition, misappropriation/theft of trade secrets, and violation of the Texas Theft Liability Act.  By the suit, Acton alleged former Acton affiliates, Beaudreau and Kennedy, used Acton's proprietary materials to build a competing "Apogee" educational network.  Acton claimed any school with "Apogee" in its name, including Apogee High Plains, misused its trade secrets.  Apogee High Plains denied accessing or using Acton materials and claimed it developed its own curriculum based on a unique educational philosophy.  Apogee High Plains contends Acton's lawsuit is part of a campaign filing suits against all Apogee affiliates nationwide.

---

[4] The agreement stated: "Effect of Expiration or Termination.  Upon expiration or earlier termination of this Agreement, Customer shall and shall require its Authorized Users to immediately discontinue use of the Provider IP and, without limiting Customer's obligations under Section 6, Customer shall, and shall require its Authorized Users to delete, destroy, or return all copies to the Provider IP and certify in writing to the Provider that the Provider IP has been deleted or destroyed."

[5] According to the pleadings, the school network includes over 75 Apogee schools nationwide, is prominently featured on the website for Apogee Strong, LLC, a for-profit entity of which Beaudreau and Kennedy are key principals, and includes many schools that compete in the same markets as Acton.

Apogee High Plains filed a motion to dismiss Acton's claims pursuant to the TCPA. After considering the motion and response, the trial court denied the motion.[6]

## ANALYSIS

Standard of Review and Applicable Law

"The [TCPA] protects citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." *Carpenter v. Daspit L. Firm, PLLC*, No. 03-22-00466-CV, 2024 Tex. App. LEXIS 5918, at *5 (Tex. App.—Austin Aug. 14, 2024, no pet.) (mem. op.) (citing *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015)). The protection comes in the form of a motion to dismiss a suit that would stifle the defendant's exercise of those rights. *Id.* (citing *Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 363 (Tex. 2023) (providing that TCPA "protects speech on matters of public concern by authorizing courts to conduct an early and expedited review of the legal merit of claims that seek to stifle speech through the imposition of civil liability and damages."). The legislature has directed that the Act shall be "construed liberally to effectuate its purpose and intent fully." *Id.* (citing TEX. CIV. PRAC. & REM. CODE § 27.011(b)).

Courts review a motion to dismiss under the TCPA using a three-step process. *See Montelongo v. Abrea*, 622 S.W.3d 290, 296 (Tex. 2021). First, the movant bears the initial burden to show the TCPA applies because the "legal action" against the movant is

---

[6] A trial court's order denying a TCPA motion to dismiss is subject to expedited interlocutory appellate review. *Ferchichi v. Whataburger Rests. LLC*, 713 S.W.3d 330, 335 (Tex. 2025) (citing TEX. CIV. PRAC. & REM. CODE §§ 27.008(b), 51.014(a)(12)).

"based on or is in response to" its "exercise of the right of free speech, right to petition, or right of association." *Carpenter*, 2024 Tex. App. LEXIS 5918, at *6 (citing TEX. CIV. PRAC. & REM. CODE § 27.003(a)). A "legal action" is "a lawsuit, cause of action, [or] petition . . . that requests legal or equitable relief." *Id.* (citing TEX. CIV. PRAC. & REM. CODE § 27.001(6)). Second, if the movant meets its burden to show that the TCPA applies, the burden then shifts to the claimant to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id*. (citing TEX. CIV. PRAC. & REM. CODE § 27.005(c)). Third, if the claimant satisfies that burden, the court must still grant the motion if the movant "establishes an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law. *Id.* at *6–7 (citing TEX. CIV. PRAC. & REM. CODE § 27.005(d)).

Whether each party satisfied its respective burdens under the TCPA is reviewed de novo. *Id.* (citing *O'Rourke v. Warren*, 673 S.W.3d 671, 679–80 (Tex. App.—Austin 2023, pet. denied)). We may "consider the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* (citing TEX. CIV. PRAC. & REM. CODE § 27.006(a)). We review the pleadings and evidence in the light most favorable to the nonmovant. *Id.* (citing *O'Rourke*, 673 S.W.3d at 680).

<u>Issue One—TCPA Application and Exemptions</u>

By its first issue, Apogee High Plains argues the trial court erred in denying its TCPA motion because Acton's claims arise from Apogee High Plains' constitutionally

5

protected speech and association in the educational arena and Acton failed to meet its burden of establishing application of the trade secret or commercial speech exemptions.

Apogee High Plains argues it met its burden showing the TCPA applies because: (1) Acton's claims are based on Apogee High Plains' free speech on matters of public concern (specifically, education of Texas youth, which is compulsory and the subject of legislative debate concerning school vouchers); (2) Acton's claims are based on Apogee High Plains' right to associate with others regarding education, and (3) the TCPA must be construed liberally to effectuate its purpose of protecting constitutional rights while allowing meritorious lawsuits.

As the first step in the three-part inquiry, we must determine whether Apogee High Plains met its burden to show the TCPA applies to Acton's suit. We find it did.

Apogee High Plains argues Acton's suit impinges on its right to protected speech and association in the educational arena. The TCPA defines both the exercise of the right of association and the exercise of the right of free speech with reference to the making of a "communication," *see* TEX. CIV. PRAC. & REM. CODE § 27.001(2), (3), which term "includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *See id.* at § 27.001(1). Under Texas law, the right of association "means to join together to collectively express, promote, pursue, or defend common interests relating to a governmental proceeding or a matter of public concern." *Id.* at § 27.001(2). A "matter of public concern" means a statement or activity regarding "a matter of political, social, or other interest to the community" or "a subject of concern to the public." *Id.* at § 27.001(7)(B), (C).

6

In the matter before us, Acton's claims are based on allegations concerning Apogee High Plains' exercise of its right to free speech and association on a matter of concern to the public: education of children. Acton asserts that Apogee High Plains is utilizing Acton's confidential and proprietary materials in violation of Texas law by communicating to students, parents, and others concerning an alternative educational system. By its pleadings, Acton is seeking damages from Apogee High Plains for its alleged violations.

Apogee High Plains associated with Kennedy and Beaudreau to obtain materials and other information to enable them to establish the school and provide the public with an alternative educational option. *See Rose v. Sci. Mach. & Welding, Inc.*, No. 03-18-00721-CV, 2019 Tex. App. LEXIS 5232, at *8–9 (Tex. App.—Austin June 25, 2019, no pet.) (mem. op.) (finding former employees communicated trade secrets to others for the benefit of himself and the parties to whom he communicated them and thus, the suit fit within the TCPA's definition of the exercise of the right of association because the alleged communication allowed for the former employee and those parties to pursue common business interests). Further, Acton is seeking to prevent Apogee High Plains from competing with it in the field of education. Educating children is a matter of public concern. *See Morris v. Daniel*, 615 S.W.3d 571, 578 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (stating "matter of public concern" does not "categorically include all statements or activities relating to child welfare within its ambit"[;] rather, "to qualify as a matter of public concern, a communication or conduct must have some relevance to a broader public audience, not just the litigants or limited third parties who interact with them"). Because this dispute involves a broader audience in the educational arena, it is

7

a matter of public concern. *See Tex. Trib., Inc. v. MRG Med. LLC*, No. 03-23-00293-CV, 2024 Tex. App. LEXIS 3515, at *9–10 (Tex. App.—Austin May 22, 2024, pet. denied) (mem. op.) ("[t]o be a matter of public concern, a claim must have public relevance beyond the interests of the parties . . . [p]rivate disputes 'that merely affect the fortunes of the litigants are not matters of public concern'"). We find the dispute falls under the TCPA umbrella and thus, the TCPA applies. *See Reeves v. Harbor Am. Cent., Inc.*, 631 S.W.3d 299, 305–07 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) (discussing application of the TCPA).

However, a party can avoid the TCPA's burden-shifting requirements by establishing that one of the statutory exemptions applies. *Carpenter*, 2024 Tex. App. LEXIS 5918, at *10 (citing TEX. CIV. PRAC. & REM. CODE § 27.010). We consider the pleadings and record evidence to determine whether a party has met its burden on the exemption's elements. *Id.* at *11. Factual allegations in a plaintiff's petition alone may be sufficient to meet the exemption's elements. *Id.* Apogee High Plains contends Acton failed to prove by a preponderance of evidence that exemptions apply. We disagree.

Alleged trade secret disclosures may fit within the TCPA's definition of right of association. *Carpenter*, 2024 Tex. App. LEXIS 5918, at *9. "Trade secret" means:

> all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, whether tangible or intangible and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if: (A) the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily

8

ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

TEX. CIV. PRAC. & REM. CODE § 134A.002(6).

The trade secret exemption requires claims arising from an officer-director, employee-employer, or independent contractor relationship, TEX. CIV. PRAC. & REM. CODE § 27.010(a)(5)(A), which, according to Apogee High Plains, Acton did not establish between itself and Apogee High Plains. Acton asserts the trade secret exemption applies because the action arose from an independent contractor relationship and the suit seeks recovery for misappropriation of trade secrets. Acton claims the pleadings and evidence establish this exemption by preponderance of evidence, as the action originates from Acton's contractual relationship with Kennedy and Beaudreau who utilized it to misappropriate trade secrets by providing the confidential information to Rebecca and Jerry Wehust to found, promote, and operate Apogee High Plains.

The pleadings in the record establish that Acton is suing to protect alleged trade secrets or corporate opportunities.[7] Acton asserted it created proprietary materials that it has sought to protect through reasonable measures including a trademark license agreement and an access and license agreement. Both agreements contain confidentiality provisions. Those agreements are required to be acknowledged and accepted prior to being given access to Acton materials. The agreements also provide that upon termination of the contract with Acton, authorized users are to cease using all materials in any way. Further, the pleadings illustrate that the Acton materials derive

---

[7] Apogee High Plains' argument on appeal does not hinge on whether the Acton materials are trade secrets. Its appellate argument focuses on the contractual relationship aspect of the exemption.

9

independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.  *See* TEX. CIV. PRAC. & REM. CODE § 134A.002(6).

We look next to whether Acton's claims arise from a contractual relationship encompassed within the exemption.  We conclude it does.  Acton contended below that while affiliated with it, Beaudreau and Kennedy were provided with access to proprietary material created by Acton for use in Acton schools.  This, it says, created an independent contractor relationship.  In contrast, Apogee High Plains says this, at most, made Beaudreau and Kennedy licensees, rendering the exemption inapplicable.  We do not agree.  The relationship between Acton and Beaudreau and Kennedy is much more akin to that of an independent contractor relationship because there were contractual agreements between the parties and Acton provided materials to perform the task (i.e., given access to Acton materials to found and operate Acton schools) but allowed Beaudreau and Kennedy autonomy in how the result was achieved.  *See Waste Mgmt. of Tex. v. Stevenson*, 622 S.W.3d 273, 277 (Tex. 2021) (noting the test to determine whether one is an employee or an independent contractor is whether the employer "has the right to control the progress, details, and methods of operations of the work").

After they were terminated, "Beaudreau, Kennedy, and their affiliates essentially copied and pasted the Acton Academy educational model and launched a competing network."  Apogee High Plains argues Acton's complaints challenge the misconduct of Kennedy and Beaudreau, not Apogee High Plains, and further argue that even if Beaudreau and Kennedy had an independent contractor relationship with Acton, Acton

10

did not have any such relationship with Apogee High Plains.  However, "it is not necessary that the party against whom the exemption applies be a party to the contract."  *Baylor Scott & White v. Project Rose MSO, LLC*, 633 S.W.3d 263, 286 (Tex. App.—Tyler 2021, pet. denied).  It is required only that the legal action arises from an independent contractor relationship.  *Id.*  We find the action here arose from such a relationship.  Acton's pleadings established the trade secret exemption applies.

Acton also urges the application of a second exemption, known as the commercial speech exemption.  Under this exemption, the TCPA does not apply to a claim against a person who is "primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services . . . , or a commercial transaction in which the intended audience is an actual or potential buyer or customer."  *Zillow, Inc. v. BMB Dev., LLC*, No. 02-24-00553-CV, 2025 Tex. App. LEXIS 3358, at *7 (Tex. App.—Fort Worth May 15, 2025, pet. denied ) (mem. op.) (citing TEX. CIV. PRAC. & REM. CODE § 27.010(a)(2)).  Four prongs must be met for this exemption to apply: (1) the defendant (TCPA movant) was primarily engaged in the business of selling or leasing goods [or services], (2) the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services, (3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides, and (4) the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides.  *Id.* at *7–8 (citing *Castleman v. Internet Money Ltd.,* 546 S.W.3d 684, 688 (Tex. 2018)).  *See Carpenter*, 2024 Tex. App. LEXIS 5918, at *10–11.  The burden to establish the commercial-speech

11

exemption is on the party relying on it.  *Id.* at *11.  Services, while not defined by the TCPA, has been defined to mean "work done by an organization or person that does not involve producing goods."  *Zillow, Inc.*, 2025 Tex. App. LEXIS 3358, at *10.  The term can also be defined as "economic commodities, such as banking, that are mainly intangible and usually consumed concurrently with their production."  *Id.*

Apogee High Plains argues Acton provided no evidence Apogee High Plains was primarily engaged in sales rather than education, nor did it identify any commercial transaction or statements to customers.  Acton argues the commercial speech exemption applies because Apogee High Plains was primarily engaged in selling educational services, made statements in that capacity, the conduct arose from commercial transactions involving those services, and the intended audience were actual or potential customers.  We agree with Acton.

As noted, whether an exemption applies may be determined by examining the pleadings.  *See Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 476 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd) (op. on en banc reconsideration).  *See also Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) ("the plaintiff's petition . . . , as so often has been said, is the 'best and all-sufficient evidence of the nature of the action'").  The pleadings here indicate that Acton is a non-profit 501(c)(3) entity and therefore, is primarily in the business of educating children, not in the business of selling goods or services.  However, the same is not true of Apogee High Plains.  Rather, it is an education center that appears to be structured as a limited liability corporation.  Acton's pleadings show Apogee High Plains was founded as part of the Apogee school network for the purpose of selling educational services and that it has made statements based on its capacity as part of a

12

network marketing those services.[8] *See Carpenter*, 2024 Tex. App. LEXIS 5918, at *11–12 (discussing selling or leasing services under the TCPA). The pleadings therefore show Apogee High Plains is primarily engaged in the business of selling educational services. *Zillow, Inc.*, 2025 Tex. App. LEXIS 3358, at *12; *Castleman*, 546 S.W.3d at 688–89; *NexPoint Advisors, L.P. v. United Dev. Funding IV*, 674 S.W.3d 437, 447–48 (Tex. App.—Fort Worth 2023, pet. denied).

The pleadings show the statements and conduct of which Acton complains arose out of Apogee High Plains' commercial transactions, i.e. promoting and providing educational services, allegedly based on Acton's materials. The commercial speech exemption applies when communications involve business pursuits for oneself, or a business stands to profit from statements made. *Zillow, Inc.*, 2025 Tex. App. LEXIS 3358, at *12. Acton's pleadings allege that schools in the Apogee network, including Apogee High Plains, gained unauthorized access to Acton materials from Beaudreau and Kennedy and benefit from that access while competing in the private educational services arena. The pleadings also allege Apogee High Plains accepts compensation for its efforts.

Lastly, the pleadings show the intended audience of Apogee High Plains' statements or conduct are the parents and students it wished to entice to its school. The Apogee schools, including Apogee High Plains, have websites its customer base can easily find. Acton alleged that use of Acton materials is only valuable to competing

---

[8] Acton's pleadings allege that in July 2024, Beaudreau admitted to "wholesale lifting of Acton Academy content for use on Apogee's website/online content[.]" Beaudreau responded to many statements on the websites as "[d]efinitely leftover remnants of the old Acton website, and should be removed." He made many other similar comments to other statements on the websites. Acton alleges that Apogee High Plains is part of the Apogee network and was either created with or uses Acton materials.

providers in communications with potential customers, in this case, future and present students and their families.

We find Acton has satisfied its burden to show the commercial speech exemption applies here. *See Castleman*, 546 S.W.3d at 688, *Zillow, Inc.*, 2025 Tex. App. LEXIS 3358, at *14. *See also Rose*, 2019 Tex. App. LEXIS 5232, at *15–18 (finding evidence satisfied all four elements of the commercial-speech exemption).

Because the claims are exempt from the TCPA, Acton need not make a prima facie case as to its claims. *Baylor Scott*, 633 S.W.3d at 285, 288; *Round Table Physicians Grp., PLLC v. Kilgore*, 607 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). We therefore do not address Apogee High Plains' remaining issue. Tex. R. App. P. 47.1.

## CONCLUSION

Given our resolution herein, we affirm the judgment of the trial court.


Alex Yarbrough
Justice

14